## Fields' Administrator v. Chesapeake & Ohio Railway Company.

(Decided March 6, 1917.)

### Appeal from Boyd Circuit Court.

Master and Servant—Action for Death of Servant—Negligence of Master Must Be Shown.—In this action to recover damages for the death of a brakeman who when he fell from the engine or slipped on the station platform was thrown under the wheels, the evidence fails to show that the railway company was guilty of any negligence, and the trial court properly directed a verdict for the railway company.

JOHN T. DIEDERICH, H. R. DYSARD, R. D. DAVIS and S. S. WILLIS for appellant.

P. K. MALIN and WORTHINGTON, COCHRAN & BROWNING for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

In this action by the administrator of Fred Fields against the Chesapeake & Ohio Ry. Co., to recover damages for his death, the trial court, at the conclusion of all the evidence, directed a verdict for the railway company, and the administrator appeals.

The deceased, Fields, was a freight brakeman in the employ of the railway company. His run was between Ashland and Lexington. When the train upon which he was braking on the day of the accident, reached Haldeman, a small station, Fields slipped or fell from the engine on which he was at the time riding, or slipped on the station platform and went under the wheels of the train, thereby receiving the injuries which shortly afterwards caused his death.

In the lower court a recovery was sought upon the grounds that there was negligence: (1) in the operation of the train; (2) in the construction and maintenance

of the station platform at Haldeman, where the accident occurred; (3) in ordering Fields to get off the train while it was in rapid motion; (4) in the failure of the company to promulgate and enforce reasonable rules forbidding conductors and engineers to order brakemen to jump off of rapidly moving trains in the performance of their work.

There is no substantial dispute in the evidence. Generally stated, the facts are these: Fields had been working for the company as a brakeman on a freight for about six months before his death. He was a young, active and experienced man. Before the train reached Haldeman station, the conductor, who was in the caboose, notified Fields through another brakeman that there would be some switching to do at Haldeman, and it was a part of Fields' duty as head brakeman to attend to this switching. Soon after Fields received this information, he went into the engine cab and rode in it to Haldeman. His brother was the fireman of the engine. Shortly after going to the cab he went from the fireman's side to the engineer's side and told the engineer about the switching to be done at Haldeman, and the engineer then commenced slowing up for the station. After delivering this message to the engineer, Fields went back to the fireman's side and was standing in the gangway preparatory to getting off at the station which the train was then approaching at a speed variously estimated at from six to twelve miles an hour. A moment or so after this his brother saw him fall as he was attempting to get off the engine just as he stepped on the platform, and it appears that, in some way not explained, he fell between the edge of the platform, which was elevated about a foot above the track, and the track, and was caught by the moving train. As soon as his brother saw him fall, he at once notified the engineer, who applied his emergency brake and stopped the train in about two car lengths. His brother did not see him get down on the engine step, but he did see him falling and testified that: "It looked like he took two steps; when I seen him he went down and that foot went over the platform and this one was up this way. His foot went over the edge of the platform toward the rail."

Other witnesses who were standing on the ground nearby, and who had a full and unobstructed view of the platform, the engine and Fields, said that they saw him

standing in the gangway with his hand on the handle-bar, and that it looked like his foot slipped and he got overbalanced and pitched off backwards from the gangway where he was standing and before he had gotten on the platform. Another witness said that when he saw him, he had stepped on the top step of the engine and slipped and fell backwards between the platform and the engine.

The platform, which was constructed primarily for the purpose of enabling passengers to conveniently get on and off trains, was made of cinders and fine crushed rock, which were held in place by timbers. The platform was about two and one-half feet from the nearest rail, and the top of it about twelve inches above the ties. The top of the platform sloped slightly from the center toward each side for drainage purposes. It was the same type of platform that may be seen at numbers of small stations and was well built, in safe condition for use, and free from obstructions or defects.

The only orders the brakeman received were those given him by the conductor and delivered to him by his fellow brakeman. No orders were given to him to get off the train while it was running fast or to get off before it stopped. He was simply told to attend to the switching when the train reached the station.

There was no negligence in the operation of the train.

The company had not adopted any specific rules prohibiting brakemen from getting off moving trains or directing them not to get off until the train stopped or while it was running at a dangerous rate of speed, although the rules did instruct the brakemen to exercise care for their own safety

These facts do not show any negligence on the part of the railway company. There was a total failure to make out a case against it, and the court properly instructed the jury to return a verdict in its favor.

The death of Fields was caused by one of those unfortunate accidents that so often happen to trainmen without fault on the part of the company. Why he did not delay getting off until the train stopped, which it would have done in a few feet, or why he did not wait until it slowed down, if it was then going too fast to get off with safety, is not explained in the evidence. He probably thought, as many brakemen do, that he could

get off the train with safety at the speed at which it was running, and he either slipped from the gangway or step of the engine between the platform and train, or, after getting on the platform, slipped and fell. But whether he came to his death by his foot slipping on the engine step or by stumbling or. slipping after he reached the platform, is not a material inquiry, because whether it was caused in one of these ways or the other, no negli- gence was shown on the part of the company.

Wherefore, the judgment is affirmed.